In this case, plaintiff seeks compensation at the rate of $13.65 per week from *Page 55 
December 31, 1941, for a period not exceeding 400 weeks, minus compensation previously paid for four weeks, at the rate of $7.80 per week, with reservation to sue for the maximum amount of medical expenses, against Oscar Baker, Kirby Lumber Corporation and the Employers' Casualty Company, alleging that on December 31, 1941, while in the course of his employment with defendants Oscar Baker and the Kirby Lumber Corporation, at a wage of $3 per day for a seven day week, and while attempting to unload lumber from a truck, the lumber accidentally fell and struck him on the back with such force as to render him unconscious, and causing a very severe fracture of his spinal column, and the breaking, tearing, laceration, and impingement of the nerves, muscles, ligaments, and cartilages of his back, left thigh and left leg, thus causing him to be permanently and totally disabled to do work of any reasonable character.
Defendants Oscar Baker and the Employers' Casualty Company jointly answered and admitted that plaintiff, on December 31, 1941, while in the course of his employment by Oscar Baker, suffered a slight muscular strain of his back, because of which he discontinued work and was unable to resume same for a period of four weeks, and for which compensation had been paid him at the rate of $7.80 per week. They further alleged that plaintiff had, at the end of the four weeks, fully recovered from any injury which he may have received. They specifically denied the alleged weekly wages of plaintiff, but alleged on the contrary that plaintiff's wages were thirty cents per hour when he worked, and set out the number of hours he worked per week, setting forth that he was entitled only to compensation at the rate of $7.80 per week, at which rate he was paid for four weeks, and they further alleged that they have also paid all the medical and hospital bills of the plaintiff.
The suit, on motion of plaintiff, was dismissed as against the Kirby Lumber Corporation as in the case of non-suit. On the issues between plaintiff and the remaining defendants, the trial resulted in a judgment in favor of the plaintiff and against the defendants, in solido, granting plaintiff compensation at the rate of sixty-five (65%) per centum of his weekly wage of fourteen and 40/100 ($14.40) Dollars, payable weekly from December 31, 1941, for the period of his disability not to exceed four hundred (400) consecutive weeks, less the sum of $31.20 previously paid as compensation, and costs, reserving unto plaintiff his right of action to sue for medical treatment and hospitalization not to exceed $250. Defendants have appealed. Plaintiff has failed to answer the appeal.
On December 31, 1941, plaintiff, while engaged in his duties as an employee of defendant Oscar Baker, consisting of the unloading of heavy timbers from a truck, was injured by some of these heavy timbers falling from the truck and striking him on the small of his back, knocking him down and pinning him to the ground. The severity of the blow received by the plaintiff is not seriously disputed. The witnesses to the accident all agree that from 400 to 800 pounds of timber fell on plaintiff's back and knocked him down, and pinned him to the ground. The effect of the blow seemed to have rendered the plaintiff "goofy" for a few minutes. He was immediately taken to the Frazer Clinic, at DeRidder, where he was hospitalized under the care of Dr. J.E. Frazer, defendant's doctor. Dr. Frazer diagnosed his case as an injury to his back and made an X-ray picture of his back and found a fracture of the spinus process of the fourth lumbar vertebra and some rigidity of the back muscles. The doctor kept him at the clinic for five or six days and then allowed him to go home, seeing him a few more times. Some four weeks after the accident, plaintiff called on the doctor, who, after a casual examination, and not one to determine whether or not plaintiff was able to go to work, discharged him. A few days thereafter, defendants' agent called at plaintiff's home and gave him a check for $31.20, being compensation for four weeks at the rate of $7.80 per week, or sixty-five per cent. of $12.60 per week. Plaintiff did not return to work but employed an attorney, which resulted in the institution of this suit.
The weekly wage of plaintiff, that is, $14.40, as found by the trial judge and conceded by the defendant appellant as being correct, and since the plaintiff has failed to answer the appeal, is not an issue before this court, nor is the accident and injury. The only question remaining is the extent or effect of the said injury.
The preponderance of the lay testimony is to the effect that plaintiff, prior to the accident, walked straight up or in a normal way, and that since the accident, he walks *Page 56 
stooped over or bent, and that he has lost some weight; that plaintiff was an able-bodied man prior to the accident, and that thereafter he could not do the hard manual labor he was accustomed to do.
Plaintiff testified that prior to the accident he was not nervous but is now nervous; that he was accustomed to walk erect, but now, due to the pains in his back, he is forced to walk "all bent over", that he also has pains in his left leg, causing him to remain at home; that since his discharge by Dr. Frazer, he kept getting worse.
As usual, we have a conflict in the medical testimony. We see no good reason why we should go into any extensive remarks as to what each doctor found as to plaintiff's condition.
The plaintiff offered the testimony of four doctors, namely, in the order called: Dr. J.S. Rozier, Dr. O.L. Sanders, Dr. S.M. Stephens, and Dr. G.E. Reid, all of whom made physical examination of the plaintiff and testified as to their findings from the reading of three X-ray pictures offered in evidence by the plaintiff. Their testimony is to the effect that the pictures showed a fracture and displacement of the spinus process of the fourth lumbar vertebra, which has healed. According to Dr. Reid, this fracture may involve the muscle fibers. They also find that the transverse process of the 5th lumbar vertebra shows a healed fracture, with callous formation, and also a fracture of the laminae of the sacrum, which is part of the arch over the spinal cord, with displacement.
The first three doctors attribute what they find to the blow or injury received by the plaintiff, while Dr. Reid states that the deformity found in plaintiff's spinal column could be congenital or caused from the injury. However, he states that the condition of the sacrum as found is not common as a congenital condition. Their testimony from their physical examination of the plaintiff is to the effect that plaintiff has a tender spot in the lumbar region over the fourth and fifth lumbar vertebrae and has anaesthesia or loss of sensation in his left hip and leg. The first three doctors further found that the lumbar muscles over the region complained of were very tense and that this condition could not exist voluntarily. They further found that the Achilles reflex was impaired, indicating interference with the nerve supply. They were of the opinion that plaintiff was in fact suffering pain, and that his condition was due to the injury he received. Dr. Reid had not examined plaintiff's reflexes. However, all of the doctors were of the opinion that plaintiff was disabled and unable to do heavy manual labor.
The defendant likewise offered the oral testimony of four doctors, namely in the order called: Dr. G.C. McKinney, a radiologist, Dr. B.M. Shaw, Dr. T.H. Watkins and Dr. J.E. Frazer, who first had plaintiff under treatment immediately after the examination. It was stipulated that Dr. Walter Moss, who was absent on account of sickness, if present, would testify substantially the same as Dr. Watkins testified. Dr. McKinney made X-ray pictures of plaintiff and so did Dr. Frazer, but both failed to bring the pictures to court. Drs. McKinney and Shaw testified as to their findings of plaintiff's condition from their reading of plaintiff's X-ray offerings. Dr. Watkins testified as to what he found from his reading of the pictures and the physical examination of plaintiff. Dr. Frazer's testimony is as to what he found by his reading of an X-ray picture which he took and by his physical examination of plaintiff when he was admitted to his clinic. The gist of the defendants' doctors' testimony is to the effect that plaintiff did suffer a fracture of the spinal process of the fourth lumbar vertebra, which completely healed, and without any disability resulting therefrom; that there was no injury or fracture of the fifth lumbar vertebra, no formation of callous, no fracture of the sacrum, or displacement, and that the irregularity shown in the plaintiff's spinal column was congenital, and that there existed no impingement of, or pressure upon, the nerves and that plaintiff did not suffer with anaesthesia or loss of sensation in his left hip and leg.
On account of the conflict of the medical testimony, at the end of the trial, the trial court examined the plaintiff. The trial court has failed to give us, in the presence of counsel, his findings. Evidently, however, he must have found that plaintiff was not a malingerer, as contended by defendants, and found plaintiff to be permanently and totally disabled.
Suffice it to say that this case presents purely a question of fact, which was resolved in favor of plaintiff, and we are unable to find any manifest error committed by the trial judge.
Judgment affirmed. *Page 57